IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEAR MOUNTAIN ORCHARDS, INC. | : | CIVIL ACTION |
| v. | : | |
| MICH-KIM, INC., et al. | : | NO. 07-853 |
| | | (Consolidated) |

**MEMORANDUM**

**Baylson, J.**                                                                                          **November 30, 2007**

**I.     Introduction**

The question presented concerns apples: specifically whether, when an apple is converted into apple cider, it is still an agricultural product, as defined by the Perishable Agricultural Commodities Act ("PACA").  7 U.S.C. §§ 499a et. seq.  This motion is currently before the Court on Intervening Plaintiff's, M.H. Zeigler & Sons, L.L.C. ("Zeigler") Motion of Approval of its PACA Trust Claim (Doc. No. 62).  Zeigler submitted a claim against Defendant, Mich-Kim, doing business as Ellis Fleisher, Jacqueline Fleisher and Jerome Kline, ("Defendant") pursuant to PACA, asserting a right to compensation from Defendant out of the PACA Trust Fund, created, by law, to protect producers of agricultural products.  Defendant and Plaintiffs, Bear Mountain Orchards, Inc., Debruyn Produce Co., and other party plaintiffs, ("Plaintiffs") objected to Zeigler's claim on the grounds that the commodity Zeigler produced, cider, was not covered within the scope of the provisions of PACA because it was not an agriculture product, as defined by the United States Department of Agriculture.  7 C.F.R. § 46.2(u) (2004).  This Court holds that cider is not an agricultural product and therefore Zeigler is not entitled to protections under

PACA.

## II.     Background

Congress enacted PACA to provide a comprehensive scheme for the regulation of traders in fresh fruits and vegetables.  PACA seeks to provide protection for produce sellers by compelling buyers to establish an express, non-segregated "floating" statutory trust in which a produce buyer, as trustee, holds its produce-related assets in trust as a fiduciary until full payment is made to the unpaid seller, who is also the trust beneficiary.  The PACA trust commences upon delivery of the produce and continues until the produce seller has been paid in full.  7 U.S.C. § 499e(c)(2).  If the produce buyer is insolvent, or for some other reason is unable to pay its debts, the produce seller is placed first in line among the buyer's creditors to receive payments from the trust.  Frio Ice S.A. v. Sunfruit, 918 F.2d 154, 156 (11th Cir. 1990).

This lawsuit originated when Bear Mountain Orchards, Inc.[1] ("Bear Mountain") filed a complaint against Defendant, doing business as Ellis Fleisher, Jacqueline Fleisher and Jerome Kline under PACA, on March 2, 2007, because Bear Mountain had delivered produce to Defendant and had not received payment.  At Bear Mountain's behest, the Court issued a Temporary Restraining Order, stating that Mich-Kim and its principles, Ellis Fleisher, Jacqueline

---

[1] The original action was filed by Bear Mountain Orchards, Inc. under docket no. 07-cv-00853.  Debruyn Produce Co., California Citrus Selectors, Inc., and Mills Family Farms (collectively "DeBruyn Plaintiffs") filed a separate suit titled DeBruyn Produce Co., et al., v. MichKim under docket no. 07-cv-0892.  These two lawsuits were then consolidated upon consent of all the parties on March 21, 2007 under docket no. 07-cv-00853 (Doc. No. 25). Docket no. 07-cv-0892 has been closed.  Rigby Produce, Inc. intervened as a third party plaintiff with similar claims against Mich-Kim on April 26, 2007.  Teamsters Health & Welfare Fund of Philadelphia and Vicinity, Teamsters Pension Trust Fund of Philadelphia and Vicinity, Teamsters Local 929 Supplemental Income Plan, and Teamsters Local 929 moved to intervene on August 6, 2007 (Doc. No. 49).  Court has granted this motion. Taylor Farms Maryland, Inc. and Intrade Industries entered the lawsuit as interested parties.

Fleisher and Jerome Kline, must not pay, withdraw, transfer, assign, or sell any and all existing PACA trust assets to any creditors until further order of the Court, or until Defendant paid Bear Mountain for all of the produce. The Court established a procedure, upon agreement between the parties, to determine what Defendant would pay out to each qualified PACA trust claimant (Doc. No. 25).

On September 27, 2007, Zeigler filed a motion for approval of its PACA trust protection claim for its product, cider. Defendant and Bear Mountain objected to Zeigler's claim on the grounds that the product that Zeigler manufactures, cider, is not a "perishable agricultural commodity" as defined by the PACA statute and therefore Plaintiff is not entitled to PACA protection. See 7 C.F.R. § 46.2(u) (defining fresh fruits and vegetables). The parties have reached an agreement as to payment owed to all claimants by Defendant, save Zeigler, whom Defendant asserts is not covered by PACA.

Zeigler's argument turns, in part, on the process by which it manufactures apple cider from apples. In order to make apple cider, Zeigler claims it first washes the apples with water. Zeigler then grinds them and squeezes them in order to remove all of the apple's juice. The stems, seeds, and skin are then removed from the juice, which is placed in a refrigerated tank. The juice is heated, allowed to cool, and then bottled. Sometimes a small amount of spice or flavoring is added to the apple juice from other fruits, such as raspberries, cranberries and pomegranates. No concentrate is added. (Pasha Decl. ¶ 2).

### III.    Legal Standards

PACA provides a "code of fair play...an aid to agricultural traders in enforcing their contracts." Regulations under the Perishable Commodities Act, 49 Fed. Reg. 45735 (Nov. 20,

1984) (to be codified at 7 C.F.R. pt. 46.46(g)(2)).  PACA requires produce buyers to make full and prompt payment for the produce they purchase.  7 U.S.C. § 499(b)(4).

Under PACA, the purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc., 986 F.2d 1010 (6th Cir. 1993).  Failure of the buyer to maintain trust assets sufficient to make a full and prompt payment to the seller is unlawful.  7 U.S.C. § 499b(4).  An unpaid seller loses the benefit of the trust unless it serves written notice of its intent to preserve trust benefits with the produce buyer within 30 days after payment becomes past due. 7 U.S.C. § 499e(c)(3).  The trust is established when the buyer first purchases the produce, and exists throughout the life of the buyer's business, or until the seller has been paid in full.  Any assets purchased by the buyer during the existence of the trust will be assumed to be purchased with trust assets and will become part of the trust fund assets, available to satisfy the claims of the qualified, unpaid seller.  In re: Atlantic Tropical Market, 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990).  A buyer may overcome this assumption if he can show that a particular asset was acquired without use of any of the proceeds from the buyer's dealings in produce.  Frio Ice S.A., 918 F.2d at 156 (11th Cir. 1990).

In order to become a perfected Perishable Agricultural Commodities Act trust beneficiary, a claimant must show that (1) the goods in question were perishable agricultural commodities; (2) the commodities were received by a commission merchant, a dealer or a broker; and (3) the claimant provided written notice of its intent to preserve its rights under PACA within thirty days after payment became due.  In re Lombardo Fruit & Produce, 106 B.R. 593, (Bankr. E.D. Mo. 1989), aff'd 12 F.3d 110, (8th Cir. 1993).

IV.     **Discussion**

Neither party disputes that Defendant bought cider from Zeigler, nor that Zeigler preserved its rights under PACA by providing written notice of its intent to preserve those rights within thirty days after payment became due. The parties only disagree as to whether cider is a perishable agricultural commodity, as defined under PACA.

A.     **Parties Contentions**

Zeigler contends that the trust provisions of PACA apply to apple cider because the Department of Agriculture, which has regulatory authority over PACA, has adopted an expansive definition of what qualifies as "perishable agricultural commodities" in its regulations. Specifically, Zeigler points to 7 C.F.R. § 46.2(u), which defines "fresh fruits and vegetables" as:

> including all produce in fresh form generally considered as perishable fruits and vegetables, whether or not packed in ice or held in common or cold storage, but does not include those perishable fruits and vegetables which have been manufactured into articles of food of a different kind or character. The effect of the following operations shall not be considered as changing a commodity into a food of a different kind or character: Water, steam, or oil blanching, battering, coating, chopping, color adding, curing, cutting, dicing, drying for the removal of surface moisture; fumigating, gassing, heating for insect control, ripening and coloring, removal of seed, pits, stems, calyx, husk, pods rind, skin, peel, et cetera; polishing, precooling, refrigerating, shredding, slicing, trimming, washing with or without chemicals; waxing, adding of sugar or other sweetening agents; adding ascorbic acid or other agents to retard oxidation; mixing of several kinds of sliced, chopped or diced fruit or vegetables for packaging in any type of containers; or comparable methods of preparation.

Zeigler states that in making their apples into cider, they do nothing to the apples that is not included in the C.F.R. definition, supra. Therefore, Zeigler asserts that their cider should be considered an agricultural product under PACA. Furthermore, Zeigler argues that including cider within the scope of PACA protection is consistent with the purpose of PACA: to ensure

that small dealers of produce receive payment for perishable commodities. Plaintiff contends that since certain types of frozen, battered, oil-blanched french fries are considered agricultural commodities, their products should be as well.

Defendant claims that by transforming apples into cider, Zeigler converts the apples into a food of a different kind or character. Defendant claims that the essential nature of the apple is changed when it is converted to cider and therefore Zeigler is not a proper PACA trust recipient.

### B. Court's Analysis

The Court agrees with Defendant's analysis. The PACA statute, 7 U.S.C. § 499e(c)(2), separates perishable agricultural products from other types of products, stating in the first phrase of the statute that PACA protection was only meant to cover perishable agricultural products. The United States Department of Agriculture, which was granted regulatory authority over PACA, states that perishable agricultural commodities "[do] not include those perishable fruits and vegetables which have been manufactured into articles of food of a different kind or character." 7 C.F.R. § 46.2(u). While the creation of cider from apples involves steps, such as dicing, refridgerating, and removing seeds, which are listed in the definition as activities that do not change an agricultural product to a non-agricultural product, the essential nature of an apple is changed when it is converted into cider. Therefore, cider manufacturers are not covered by the PACA trust fund.

In Endico Potatoes v. CIT Group/Factoring Inc., 67 F.3d 1063, 1069-70 (2d Cir. 1995), the Court held that PACA protections only cover a narrow set of products: "if the creation of a PACA trust is not limited to transactions in perishable agricultural commodities, there is no rational means of limiting the language of Section 499e(c)(2) to cover less than all transactions in

all derivative products, including even transactions in accounts receivable arising from the sale of those products.  This result would be at odds with the language of the statute discussed above and its limited purposes..." The Endico Court drew a clear distinction between perishable agricultural products and derivative products.  The first would qualify for PACA protection while the second would not; PACA, the Court held, was meant to protect producers of commodities that are in their natural form or are subject to changes in form which do not alter the essential nature of the item.  Id. at 1070.

     The Endico Court held that cole slaw, potato salad, other types of salads, many of which contain vegetables, cream cheese, potato salad, frozen onion rings, breaded cauliflower, zuchini sticks and pickles did not qualify for PACA protection. Id. at 1071.  The Endico Court did find that certain potato products which were steamed, sliced, peeled, water blanched, surface seared in hot oil, and lightly breaded were covered under PACA.  Id.  PACA specifically protects both fresh and frozen fruits and vegetables.  7 C.F.R. 46.2(u).  The changes that were made to the potatoes were to ensure that they retained their color when frozen, as well as to prepare the potatoes for certain types of cooking.  Endico, 67 F.3d at 1071.  None of the processes which the potatoes underwent, the Court held, changed their essential nature as potatoes.

     In the instant case, Zeigler cites In re: Fleming Companies Inc., 2006 WL 2793176 (D.Del. Sept. 28, 2006), in which french fries that had been frozen, battered, and oil-blanched were granted PACA protection.  They argue that if products such as these are considered perishable agricultural products, their cider, which is made from all natural ingredients, should be as well.  However, the Fleming Court ruled that freezing, battering and oil-blanching potatoes did not change the product's essential character as a potato product, in part because frozen

7

potatoes could not be shipped practically without oil-blanching. Furthermore, the Fleming Court held potato products, including french fries, represent the largest single frozen commodity shipped in the United States and that to exclude them from PACA protection would be inconsistent with the intent of the statute. Id. at 2.

Both the Endico Court and the Fleming Court held that a potato was still a potato even when battered, frozen, and oil-blanched. This does not mean, however, that cider, which is an entirely different food product than an apple, has not been altered so drastically as to change its essential nature. This Court holds that to include cider as an agricultural product would push the bounds of the statute too far, creating protections for types of derivative products for which the statute was not designed. The case of In re United Fruit & Produce Co., Inc., 242 B.R. 295 (Bankr, W. D. Pa 1999) appears to support this holding. In this case, the Fresh Juice Company of New York filed a timely claim for PACA protection. The defendant asserted that Fresh Juice was not entitled to PACA protection because the manufacturing process converted the fruit into food of a "different kind or character." Id. at 298, (citing Endico Potatoes Inc., 67 F.3d at 1070-71). Fresh Juice acknowledged that it was not entitled to PACA protection because it did not transport produce in a raw state and dropped its PACA protection claim.

**V.**     **Conclusion**

For the forgoing reasons, Zeigler's PACA trust claim is denied. An appropriate order to follow.

O:\CIVIL 07\07-853 Bear Mt v. Kim\Bear Mt. v. Mich-Kim Opinion and Order 11-30-07.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEAR MOUNTAIN ORCHARDS, INC. | : | CIVIL ACTION |
| v. | : | |
| MICH-KIM, INC., et al. | : | NO. 07-853 (Consolidated) |

## ORDER

AND NOW, this 30th day of November, 2007, upon consideration of Claimant, M.H. Zeigler's Motion for Approval of its Perishable Agricultural Commodities Act trust claim and Defendant, Mich-Kim's Memorandum in Opposition to Claimant's Motion, it is hereby ORDERED that Claimant's Motion, (Doc. No. 62) is denied. The Clerk of the Court is hereby ordered to mark this case as closed.[2]

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

---

[2] Although the Court previously granted certain parties permission to intervene, those parties did not file complaints in the time allowed, and there does not appear to be any reason to keep this case open.